17-2140-cr
*United States v. Miller*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24ᵗʰ day of October, two thousand eighteen.

PRESENT:    JOSÉ A. CABRANES,
            ROBERT D. SACK,
                    *Circuit Judges*,
            JOHN G. KOELTL,
                    *District Judge.**

———————————————————————

UNITED STATES OF AMERICA,

                *Appellee*,                    17-2140-cr

        v.

OMAR CHRISTOPHER MILLER, AKA Andy Fowl,

                *Defendant-Appellant.*

———————————————————

    * Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

1

FOR APPELEE:                                    IAN C. RICHARDSON, Assistant United
                                                States Attorney (Jo Ann M. Navickas and
                                                Andrew Gilman, Assistant United States
                                                Attorneys, *on the brief*), *for* Richard P.
                                                Donoghue, United States Attorney,
                                                Eastern District of New York, Brooklyn,
                                                NY.


FOR DEFENDANT-APPELLANT:                         MATTHEW B. LARSEN, Assistant Federal
                                                Defender, Federal Defenders of New
                                                York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (William F. Kuntz, II, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 10, 2017 judgment of conviction is **AFFIRMED**, but the cause is **REMANDED** to the District Court for resentencing.

Defendant-Appellant Omar Miller ("Miller") appeals from a judgment of the District Court convicting him, after trial, of visa fraud in violation of 18 U.S.C. § 1546(a), and sentencing him principally to twelve months' incarceration to be followed by three years of supervised release. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*      \*      \*

Miller's primary argument on appeal is that the District Court erred by failing to elicit, during *voir dire*, certain information from the prospective jurors, such as their occupations, views on immigration or visa fraud generally, and relationship to law enforcement personnel. Miller claims that without this information, he was unable to meaningfully exercise his peremptory challenges.

"Voir dire is necessarily a matter in which the trial court has extremely broad discretion," and "trial judges are not required to ask every question that counsel—even all counsel—believes is appropriate." *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002). This is in part because, with respect to *voir dire*, the interests of the court and counsel are not necessarily aligned. *See id.* ("The court wants a fair and impartial jury to be chosen and to move expeditiously to the presentation of evidence. Counsel want a jury favorable to their cause—fair or not—and voir dire aids them in exercising peremptory challenges and challenges for cause."). Accordingly, in reviewing such claims,

we "recognize that the selection by a district judge of voir dire questions must balance (i) the need to afford counsel a 'feel' as to each potential juror . . . against (ii) the need to avoid use of the voir dire as a mini-trial that delays the presentation of evidence." *Id.*; *see also United States v. Tramunti*, 513 F.2d 1087, 1114 (2d Cir. 1975) ("In almost any case there can be developed a series of questions designed to uncover some possible juror prejudice, but the orderly functioning of the judicial process requires that the trial court be allotted some flexibility to place reasonable limitations on juror examination.").

At bottom, our concern is not whether the information Miller seeks "might be helpful," but whether the District Court's failure to elicit this information rendered Miller's trial "fundamentally unfair." *Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991). In keeping with this general principle, we have identified three limited circumstances in which "voir dire may be so insufficient as to call for a reversal": where (1) "voir dire [is] so demonstrably brief and lacking in substance as to afford counsel too little information even to draw any conclusions about a potential juror's general outlook, experience, communication skills, intelligence, or life-style"; (2) the district court "fail[s] to inquire about, or warn against, a systematic or pervasive bias, including one that may be short-lived but existent at the time of trial, in the community that would have been cured by asking a question posed by a party"; or (3) the "record viewed in its entirety suggest[s] a substantial possibility that a jury misunderstood its duty to weigh certain evidence fairly that would have been clarified by asking a requested voir dire question." *Lawes*, 292 F.3d at 129. These are necessarily difficult standards to meet. Miller does not identify a single case—and we are aware of none—in which we have vacated a conviction because the district court failed to ask one or more questions during *voir dire*. *See United States v. Treacy*, 639 F.3d 32, 46 (2d Cir. 2011) (discussing absence of any such cases).

Though the information of which Miller claims to have been deprived might have been helpful to him in deciding how to exercise his peremptory challenges, we conclude that its absence did not render his trial "fundamentally unfair." *See Mu'Min*, 500 U.S. at 426. Before commencing *voir dire*, the District Court explained to the prospective jurors that Miller was charged with fraudulently obtaining a non-immigrant visa that he then used to enter the United States from Jamaica. The District Court began *voir dire* by asking the venire a series of twenty-five questions concerning, among other things, the prospective jurors' involvement with the criminal justice system, experience with the visa process, relationships with law enforcement and immigration authorities, and whether the nature of the case would affect their ability to impartially assess the evidence. The District Court also asked whether there was anything else that the court did not mention that made any potential juror "feel, personally, that [he or she] could not be an impartial and fair juror in this case." Miller Special App. at 26. Then, regardless of their responses, the District Court interviewed each prospective juror concerning his or her ability and willingness to serve, excusing many for cause. In all, this process took approximately five hours.

Miller contends that the District Court erred by requiring prospective jurors to respond to questions concerning their relationship with law enforcement authorities only if they felt that the

3

relationship "would prevent [them] from being fair and impartial in this case." *Id.* at 23. Because the record contains no suggestion that the inclusion of this qualifying language had any perceivable impact on Miller's trial, we disagree. Miller's reliance on *United States v. Littlejohn*, 489 F.3d 1335 (D.C. Cir. 2007) is misplaced. In *Littlejohn*, the trial judge affirmatively told jurors not to bring to the court's attention any relations with law enforcement personnel unless the juror believed that he or she could not be fair and impartial to both sides. *Id.* at 1340-41. In this case, the District Court did not emphasize the qualifying language to which Miller objects, and the record shows that prospective jurors who heard the compound question brought numerous relations with law enforcement personnel to the Court's attention. The District Court struck many of these jurors for apparent cause. Moreover, unlike in *Littlejohn*, this was a case in which the evidence against Miller was strong and did not depend on an assessment of law enforcement witnesses' credibility. *See United States v. Harris*, 515 F.3d 1307, 1313 (D.C. Cir. 2008) (affirming conviction and distinguishing *Littlejohn* despite the use of a compound question because of the strength of evidence that did not depend on the credibility of law enforcement personnel).

That said, where, as here, the parties do not have complete information regarding the occupations of the prospective jurors or the members of their households, we think the better practice is to determine whether such relationships exist and *then* to probe whether those relationships might prevent a prospective juror from being fair and impartial—not to rely on the jurors to make the latter assessment in the first instance. Though we are mindful that "[t]he Constitution . . . does not dictate a catechism for *voir dire*," *Morgan v. Illinois*, 504 U.S. 719, 729 (1992), and that *voir dire* proceedings ultimately depend to a large degree on the veracity of prospective jurors, this procedure would decrease the risk that a prospective juror would overlook, discount, or attempt to hide a potential source of bias.

On review, we cannot say that *voir dire* in this case was "so demonstrably brief and lacking in substance as to afford counsel too little information even to draw any conclusions" about the prospective jurors, or that the District Court completely overlooked "a systematic or pervasive bias." *Lawes*, 292 F.3d at 129. Nor has Miller pointed to any indication—or, indeed, even suggested—that the "jury misunderstood its duty to weigh certain evidence fairly." *Id.* Accordingly, we see no reversible error here.

\* \* \*

Miller's remaining arguments are similarly unavailing. He first contends that the District Court erred by allowing the Government to introduce evidence concerning the offense for which he was arrested in 1996 and 2010, namely, "shooting with intent." We review a district court's evidentiary decisions for abuse of discretion, *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006), and harmless error, *United States v. McCallum*, 584 F.3d 471, 474 (2d Cir. 2009). We see no abuse of discretion in the admission of the names of the crimes for which Miller was arrested in view of the importance, in this case, of showing that Miller had a motive to avoid disclosing his prior

4

arrests because their serious nature might have imperiled his visa application. In any event, any error in the admission of this evidence was harmless. To determine whether an error is harmless, we consider "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence." *Id.* at 478 (alteration and quotation mark omitted). Given the strength of the Government's case against Miller, we conclude that any error stemming from the introduction of this evidence was harmless. *See id.* ("We have repeatedly held that the strength of the government's case is the most critical factor in assessing whether error was harmless.").

Miller also contends that the District Court erred in instructing the jury that the case was "important to the Government" because "*the enforcement of criminal laws is a matter of prime concern to the community.*" Miller App. 562 (emphasis added). "We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998). Viewing the District Court's jury instructions as a whole, we conclude that the inclusion of the phrase to which Miller objects was not error. *See* Leonard B. Sand et al., *Modern Federal Jury Instructions*, Instruction 2-5: The Government as a Party (2016) (endorsing a similar instruction).

Finally, Miller argues that we should reverse his conviction because "the cumulative effect of [the] trial court's errors, even if they are harmless when considered singly, . . . amount[s] to a violation of due process." Miller Br. 33 (quoting *United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008)). But the errors Miller identifies—to the extent they are errors at all—do not "call into serious doubt whether [he] received the due process guarantee of fundamental fairness," and therefore do not require reversal. *United States v. Haynes*, 729 F.3d 178, 197 (2d Cir. 2013).

\*     \*     \*

In addition to challenging his conviction, Miller asks us to vacate his sentence. He argues that the District Court erroneously enhanced his sentence for participating in the 1996 shooting for which he was arrested without finding by a preponderance of the evidence that he in fact participated in this shooting. Indeed, Miller claims that the Government introduced no evidence that would have permitted such a finding. The Government agrees, and so too do we. *See United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (requiring "that facts relevant to sentencing . . . be found by a preponderance of the evidence"). Accordingly, we remand the case to the District Court for resentencing consistent with this Order. We leave it to the District Court to decide whether the other aggravating factor it identified—that Miller made similar misrepresentations in other official documents—is sufficient to support the sentence it originally imposed.

\*     \*     \*

We have reviewed all of the remaining arguments raised by Miller on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the July 10, 2017 judgment of conviction and **REMAND** the cause to the District Court for resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk